UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:13-CR-091 JD |
| | ) | |
| ERIC GAINER | ) | |

## OPINION AND ORDER

Now before the Court is the government's motion in limine to exclude evidence

regarding a polygraph test taken by the defendant. [DE 25]. Eric Gainer, the defendant, was

indicted on August 14, 2013, for knowingly making false statements in connection with the

acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6). [DE 1]. The government alleges

that Mr. Gainer falsely stated that he had not been convicted of a felony and that he was not

under a restraining order when he submitted an application to acquire a firearm. [*Id.*] For the

reasons that follow, the Court grants the government's motion; evidence pertaining to the

defendant's polygraph examination will be excluded from trial.

On November 9, 2013, after his indictment in this matter, Mr. Gainer took a privately-

administered polygraph examination. [DE 39-1]. As part of the examination, Mr. Gainer first

drafted and signed a one-page, handwritten statement in which he recounted the circumstances of

his statements and denied having intentionally made false statements. [*Id.*] He then took the

polygraph test, during which the following questions were posed: "Did you lie in your Signed

Statement?" and "Did you lie in the Statement you have signed today?" [*Id.*] Mr. Gainer

answered "No" to both questions, and the examiner, a retired FBI agent, concluded that "no

deception was indicated to the relevant questions on this examination." [*Id.*] The report does not

indicate what other questions, if any, were asked during the examination, and the examination

was not recorded. Mr. Gainer did not notify the government about the polygraph test until after

he took the test and received his positive results. Mr. Gainer wishes to introduce evidence of the polygraph test at trial in order to establish that he did not have a culpable state of mind at the time he made the statements for which he has been charged.

"[I]n determining whether to admit polygraph evidence, the district court must take as its guide Rule 403 of the Federal Rules of Evidence." *United States v. Lea*, 249 F.3d 632, 638 (7th Cir. 2001) (citing *United States v. Robbins*, 197 F.3d 829, 844 (7th Cir. 1999)). Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. While the Seventh Circuit does not direct district courts to "conduct a full *Daubert* analysis in order to determine the admissibility of standard polygraph evidence," it has noted that "the factors outlined by the Supreme Court in *Daubert* remain a useful tool for gauging the reliability of the proffered testimony, as reliability may factor into a 403 balancing test." *Lea*, 249 F.3d at 640. Specifically, the reliability of polygraph evidence affects both sides of the 403 scale, as it bears on the probative value of the evidence as well as the potential for misleading the jury. *Id.*

In weighing these factors here, the Court concludes that the polygraph evidence must be excluded because the danger of misleading the jury substantially outweighs the probative value of the evidence. First, as even defense counsel acknowledges, "there is a lack of consensus as to the reliability of polygraph techniques." [DE 32 p. 2]; *see also United States v. Scheffer*, 523 U.S. 303, 310 (1998) ("[T]here is simply no consensus that polygraph evidence is reliable."). This not only reduces the probative value of such evidence, but increases the risk of misleading the jury. Second, "[a] fundamental premise of our criminal trial system is that 'the *jury* is the lie detector,'" and jurors are presumed to be entirely capable of assessing credibility on their own.

*Scheffer*, 523 U.S. at 313. Polygraphs may provide a jury with some additional evidence to inform those assessments, but they are certainly not indispensable to that process, so their probative value is limited. *Id.* (comparing polygraph evidence to other classes of expert testimony such as the analysis of fingerprints, ballistics, or DNA found at a crime scene, which a jury would be unable to evaluate without the assistance of expert testimony). Third, the "aura of infallibility" of expert testimony may cause jurors "to abandon their duty to assess credibility and guilt," giving undue weight to this questionably-reliable evidence and disregarding their own assessments. *Id.* at 314. Therefore, given the limited incremental value of such evidence and its substantial dangers, excluding polygraph evidence under Rule 403 will often be proper.

The specific circumstances of this case only reinforce that conclusion here. Mr. Gainer took the polygraph test without first notifying the government of his intent to do so or agreeing that the results would be admissible whether he passed or failed. This further undermines the reliability of the test, which works by measuring relative anxiety. *United States v. Tucker*, 773 F.2d 136, 141 (7th Cir. 1985). Where there are no consequences to failing the test, as when a defendant has not agreed the test will be admissible if he fails, lying gives no cause for added anxiety, so the reactions that the test measures and on which it depends for its reliability may not occur. *Id.* As the Seventh Circuit observed in *Tucker*, where the defendant similarly refused to stipulate to the admissibility of the test before taking it, "Such a refusal could well make lie-detector test results unreliable. . . . [I]f the person taking the test has nothing to lose and everything to gain, he may not be anxious and his passing the test may prove nothing." *Id.* The Seventh Circuit cited these same factors in upholding the exclusion of polygraph evidence in *United States v. Ross*:

> There was no abuse of discretion [in excluding the polygraph evidence] here because, for one thing, the manner in which the test was administered—privately commissioned, in the eleventh hour, and without notice to the government—was highly suspect. Not surprisingly, Ross fails to identify another case where polygraph evidence was admitted in similar circumstances. Indeed, courts have routinely rejected unilateral and clandestine polygraph examinations like the one taken here, citing concern that a test taken without the government's knowledge is unreliable because it carries no negative consequences, and probably won't see the light of day if a defendant flunks.

412 F.3d 771, 773–74 (7th Cir. 2005) (collecting cases). As in *Ross* and *Tucker*, Mr. Gainer did not agree prior to taking the test that it would be admissible regardless of its results, and did not disclose the test to the government until after he passed it. This adds a further degree of unreliability to the already-questionable polygraph evidence, which in turn further diminishes its probative value and heightens the danger of misleading the jury.

In addition, there are several aspects of the Polygraph Report itself that call the test's reliability even further into question. For example, the report does not give any indication of what methodology the examiner used or whether the methodology was consistent with the accepted practices for such a test. The report also makes a conclusory statement that Mr. Gainer was "found to be a capable reactor," but does not give any basis for that conclusion, and does not indicate whether any questions other than the two "relevant" questions were asked. Finally, as noted by the government, the "relevant" questions are themselves problematic. As to the first question, "Did you lie in your Signed Statement," it could be referring to either Mr. Gainer's signed ATF Form 4473 or the handwritten statement he signed just prior to taking the test. In addition, even if the question referred only to the latter statement, as the second question appears to, that statement contains seven sentences asserting multiple facts and contentions. Questions with such a high level of generality and ambiguity seem ill-suited to eliciting the specific physical responses the test is designed to measure, as Mr. Gainer could have had a number of

different things in mind while answering them. These concerns could call the reliability of this evidence into question even if polygraphs were accepted as a general matter, which, again, diminishes its probative value and heightens the danger of misleading the jury.

For all of these reasons, the Court concludes, consistent with a clear and consistent line of cases, that the limited probative value of this polygraph evidence is substantially outweighed by the danger of misleading the jury. *Ross*, 412 F.3d at 773–74 (collecting cases). The government's motion [DE 25] is therefore GRANTED, and the Court will exclude evidence regarding the polygraph examination from trial pursuant to Rule 403 of the Federal Rules of Evidence.

SO ORDERED.

ENTERED:  January 24, 2014

_____ /s/ JON E. DEGUILIO_____
Judge
United States District Court